### STILLWELL v. THE J. D. HALL.[1]

*(District Court, S. D. New York. April 11, 1888.)*

SHIPPING—CARRIAGE OF GOODS—LIABILITY FOR LOSS.

Tin was shipped from New York to Buffalo in an open boat, contrary to custom, and, by reason of heavy rains, and some leaking of the boat, was delivered damaged, for which damage this suit was brought. The evidence indicated that there had been a complete misunderstanding between libelant and claimant as to the hatches of the boat, the libelant supposing they were to be used, the claimant supposing the libelant waived the use of them. *Held*, that both were in fault for the damage; the claimant, as common carrier, being bound to carry the goods safely, and to know what was improper to be carried without hatches; and the libelant, whose employe loaded the boat, for not seeing to it that the latter had hatches. Both were also in fault for not dunnaging such a cargo in an open boat. *Held*, that libelant should recover half his damage.

*A. B. Stewart*, for libelant.
*Hyland & Zabriskie*, for claimants.

BROWN, J. The libelant, acting as common carrier, contracted with the captain of the canal-boat J. D. Hall, in May, 1886, to carry a cargo of tin in boxes from New York to Buffalo. The Hall was a Pennsylvania open-deck boat, provided with large hatches, so that the deck could be covered. The hatches, however, were at this time in Buffalo. During the trip, through heavy rains and some leaking of the boat, a portion of the cargo sustained damages, to recover for which this action was brought. For the claimant it is contended that in the contract of carriage it was expressly stated that the boat was an open-deck boat, and would have no hatches for the trip. If the testimony warranted a finding that this was the understanding, I should have no hesitation in acquitting the boat of liability. The contract in that case would plainly put upon the libelant the risk of the weather, as in the case of a contract for shipping goods to be carried on deck. The libelant's story, however, is precisely the reverse. He testifies that in answer to his inquiries whether the boat had hatches the claimant replied that he had; that tin in cases was a kind of cargo that was never customarily shipped on deck, or in boats without hatches. Considering the fact that the tin was liable to damage from wet weather; that it is never customarily shipped on deck, or exposed in

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

open boats; and that the libelant was well acquainted with the proper handling of such goods, it is impossible to suppose that the claimant, after making the express inquiry whether the claimant had hatches or not, would have shipped these goods in an open boat had he understood that there were no hatches for this trip. Nevertheless, an additional witness for the claimant confirms the latter's testimony that in answer to the libelant's inquiries he told him that the hatches were in Buffalo. In this state of things I can see no alternative but to find that there was a direct and complete misunderstanding on each side; and that both, taking the circumstances all together, are to blame for such a shipment without a clear understanding upon so important a point. The claimant, as common carrier, was bound to carry the goods safely, and to know what was proper and improper to be carried without hatches. The very fact of the libelant's inquiry about his hatches, the nature of the articles, their liability to damage in an open boat, and the custom not to carry them in an open boat, should have put him on his guard against misunderstanding. Ordinary care and prudence, under such circumstances, required the captain, either by repetition or by a very clear statement, to take special care that no misunderstanding existed. In whatever way the misunderstanding arose, —and there are various forms of question and answer by which it might arise,—the previous conversation could not have been wholly clear and unequivocal. Even the libelant, in his protest, did not speak quite surely about it. On the other hand, the boat was loaded by the libelant's employe, who was also presumably acquainted with the custom of the business, and with the impropriety and danger of shipping tin in an open boat. There were no hatches visible; and they are so bulky as to be conspicuously present or absent. Yet no further inquiry was made on the subject. Upon both sides, as it seems to me, there were sufficient circumstances to impose upon each the necessity of more caution, and of more careful inquiry than was made. Moreover, the evidence would indicate that the damage was caused from the accumulation of water upon the bottom of the boat, on which the lower tiers of boxes rested. The claimant, knowing the liability of such cargo to be injured by water accumulating in that way in rainy weather, ought to have put dunnage beneath the lower tiers, to avoid that danger. It is not, indeed, usual to put dunnage in canal boats; but it was not usual to carry tin in open boats. In departing from the custom by taking such cargo in an open boat, the claimant was bound to take reasonable precaution to protect it from injury, by the use of dunnage, as in other cases of known necessity therefor. But in this respect, also, the libelant would seem to be chargeable with blame, since the loading was done by his own man, and no dunnage was suggested. The damages and costs must therefore be divided.